# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, *EX REL.*, MICHAEL DEWINE OHIO ATTORNEY GENERAL,<br><br>      Plaintiff,<br><br>v.<br><br>ROVER PIPELINE LLC<br><br>      Defendant. | Case No. _____<br><br>**Removed From The Court Of Common Pleas, Stark County, Ohio, Case No. 2017CV02216** |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, Defendant Rover Pipeline LLC hereby removes the above-captioned action—originally filed as Case No. 2017CV02216 in the Stark County Court of Common Pleas—to this Court. In this action, the State of Ohio alleges *inter alia* that Rover illegally discharged drilling fluid into Ohio's waters while constructing the Rover Pipeline.

## PROCEDURAL REQUIREMENTS

1. Rover was served with a copy of the initial complaint in this action on November 9, 2017. This notice of removal is being filed within 30 days of that date and is therefore timely under 28 U.S.C. § 1446(b)(1).

2. An amended complaint was filed on November 30, 2017 but has not been served on Rover Pipeline LLC. References in this notice are to the paragraph numbering in the original complaint. Because the amended complaint adds parties and other allegations, the amendments do not alter the grounds for removal set forth here.

3. Removal to this Court is proper because Stark County is located within the Northern District of Ohio. *See* 28 U.S.C. § 1446(a).

1

4. Rover will promptly serve the State with written notice of removal and will file a copy of this notice with the Stark County Court of Common Pleas. *See* 28 U.S.C. § 1446(d).

5. Exhibit A, Exhibit B and Exhibit C to this notice contain "all process, pleadings, and orders served" upon Rover in the above-captioned action. *See* 28 U.S.C. § 1446(a).

**GROUNDS FOR REMOVAL**

6. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed." The district courts of the United States have original jurisdiction over "all civil actions arising under" the laws of the United States. *Id.* § 1331. Claims pled in state-law terms nonetheless arise under federal law if they necessarily raise a substantial and disputed federal issue capable of resolution in federal court without upsetting the congressionally approved balance of federal and state authority. *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). The "entire action" is removable if one claim arises under federal law. 28 U.S.C. § 1441(c)(1).

**A.     NPDES Claims**

7. One of the principal federal environmental statutes at the heart of the State's claims—the Clean Water Act—states that "the discharge of any pollutant by any person shall be unlawful," subject to certain exceptions. 33 U.S.C. § 1311(a). One of those exceptions—located in Section 402 of the Act—provides for the issuance of National Pollution Discharge Elimination System ("NPDES") permits allowing and regulating the discharge of pollutants. *See* 33 U.S.C. § 1342(a). Section 402 allows States to "administer [their] own program" for issuing NPDES permits, which must "apply, and insure compliance with" requirements of the Clean Water Act. *Id.* § 1342(b)(1)(A).

8.     Pursuant to the Clean Water Act, the State administers its own NPDES permit program to ensure compliance with the Act.  *See* Ohio Admin. Code § 3745-33-02 ("The director shall administer and enforce permits issued under Section 402(a) of the [Clean Water Act] within this state.").

9.     The State alleges that Rover discharged pollutants without obtaining required NPDES permits.  Compl. ¶¶ 77-91.  These allegations necessarily raise the substantial and disputed issue of whether federal law (the Clean Water Act) required NPDES permits for the alleged discharges here.

10.    Additionally, the Clean Water Act provides that an NPDES permit is not required "for discharges of stormwater runoff from mining operations or oil and gas exploration, production, processing, or treatment operations."  33 U.S.C. § 1342(*l*); *see also* 40 C.F.R. § 122.26(c)(1)(iii).

An important aspect of the State's NPDES allegations is that Rover caused stormwater discharges without a required NPDES permit.  Compl. ¶¶ 92-96, 106-08.  These allegations necessarily raise the substantial and disputed federal issue of whether the Clean Water Act requires an NPDES permit for these stormwater discharges.  The State has acknowledged that if such a permit is required it would be "[p]ursuant to 33 U.S.C. § 1342(*l*)(2) of the Clean Water Act and 40 C.F.R. § 122.26(c)(1)."  Exhibit C, July 7, 2017 Order ¶ 57.  The NPDES claims therefore arise under federal law.

**B.    Water-Quality Standards Claims**

11.    In other claims the State alleges that Rover violated certain water-quality standards.  *See* Compl. ¶¶ 97-105 (citing Ohio Admin. Code §§ 3745-1-04(A), 3745-1-04(B), 3745-1-04(C), 3745-1-51(A)-(B)).

3

12. Federal law is the source of the water-quality standards allegedly violated here. The Clean Water Act delegates to the States authority to promulgate water-quality standards and sets certain requirements governing the States' establishment of such standards. *See* 40 C.F.R. §§ 131.10-15. Moreover, the Environmental Protection Agency must review and approve State water-quality standards. *Id.* § 131.21.

13. The water-quality standards that the State invokes here were enacted under federal authority delegated to the States in the Clean Water Act, and those standards serve to "maintain water quality as provided under … the federal Clean Water Act, and rules adopted thereunder." Ohio Admin. Code § 3745-1-01.

14. Because these water-quality standards are based on delegated federal authority, Rover's alleged duties to comply with them arise under the Clean Water Act. The State's allegations thus necessarily raise the substantial and disputed federal issue of whether Rover complied with these federal duties.

**C. Section 401 Claim**

15. Section 401 of the Clean Water Act states that "[a]ny applicant for a Federal license or permit to conduct any activity … which may result in any discharge into the navigable waters shall provide … a certification from the State in which the discharge originates." 33 U.S.C. § 1341(a). The Act further provides that, if a State "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application." *Id.* The State received Rover's request for certification in November 2015, and it failed to act of that request until February 2017.

16.     The State alleges that Rover engaged in activities requiring a Section 401 certification without taking all of the steps for obtaining one. Compl. ¶¶ 127-31. These allegations necessarily raise the substantial and disputed federal issue of whether Section 401 of the Clean Water Act required a certification for these activities given the State's failure to act on Rover's request for certification within one year of the State's receipt of the application.

D.      **The Federal-State Balance**

17.     "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 810 (1986). The State's claims necessarily raise substantial and disputed federal issues under the Clean Water Act. And the broader statutory framework demonstrates that Congress did not strike a balance in favor of state court resolution of these claims. Instead, it recognized a strong federal interest in disputes like those raised here.

18.     Congress has vested the Federal Energy Regulatory Commission ("FERC") with extensive and exclusive authority over interstate natural-gas pipelines such as Rover under the Natural Gas Act, 15 U.S.C. §§ 717 et seq. In doing so, Congress imposed special limitations on State authority over natural-gas pipeline construction under the Clean Water Act, thus tipping the scales in favor of federal jurisdiction.

19.     In accordance with the pervasive federal authority over natural-gas pipelines, the Clean Water Act exempts oil and gas exploration and production activities from the Act's stormwater permit requirements. 33 U.S.C. § 1342(*l*)(2). The State's NPDES claims turn on whether this exemption applies.

20.     Moreover, under Section 401 of the Act, if a State fails to act timely on an application for a state certification, the requirement is waived. With respect to pipelines within

FERC's jurisdiction, such a waiver returns authority under the Clean Water Act to FERC.  *See Del. Riverkeeper Network v. PA Dept. Enviro. Protection*, 833 F.3d 360, 376 (3d Cir. 2016). ("[A] state's refusal to issue a Water Quality Certification … waive[s] the need for the [interstate natural gas] facility to obtain a Certification in order to satisfy conditions of FERC's certificate of public convenience and necessity.  In effect, such a refusal … return[s] the state's delegated authority to enforce Section 401 of the Clean Water Act to FERC with respect to the project."). Here, there is a dispute over whether the State waived the certificate requirement, putting FERC's authority directly at issue.

21. In addition, the State makes allegations based on Rover's implementation of stormwater control procedures specified in FERC's certificate of public convenience and necessity.  These federal agency certificates govern all aspects of "the operation, sales, service, construction, extension, or acquisition" of pipelines "for which permission and approval is requested."  18 C.F.R. § 157.5(a); *see also* 15 U.S.C. § 717f(c).  The State's claims thus necessarily implicate a federal agency's authority and decisions regarding the pipeline.

22. The overall statutory scheme demonstrates that Congress did not favor resolution of disputes like this in state court.  Instead, federal court jurisdiction protects FERC's substantial and exclusive authority over construction and operation of natural gas pipelines and prevents a state court from unilaterally interfering with that authority.

23. A filing fee of $400.00 has been tendered to the Clerk of the United States District Court for the Northern District of Ohio.

24. This Notice of Removal is being signed pursuant to Federal Rule of Civil Procedure 11. A copy of the civil cover sheet is attached hereto.

WHEREFORE, the Removing Defendant respectfully requests that this action be removed to the United States District Court for the Northern District of Ohio.

|  |  |
|---|---|
| December 8, 2017 | Respectfully submitted, |
|  | /s/ Stephen H. Daniels |
|  | Stephen H. Daniels (0019198) |
|  | Michael S. McMahon (0014285) |
|  | McMahon DeGulis LLP |
|  | The Caxton Building |
|  | 812 Huron Road, E., Suite 650 |
|  | Cleveland, Ohio 44115 |
|  | (216) 367-1402 |
|  | sdaniels@mdllp.net |
|  | mmcmahon@mdllp.net |
|  |  |
|  | *Counsel for Defendant, Rover Pipeline LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above Notice was served upon the following, by mail on 8th day of December, 2017.

MICHAEL DEWINE
OHIO ATTORNEY GENERAL
Valoria Hoover (0059596)
Aaron Farmer (0080251)
Sarah B. Anderson (0082817)
Amanda M. Ferguson (0089576)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
614-466-2766
Valoria.Hoover@OhioAttorneyGeneral.gov
Aaron.Farmer@OhioAttorneyGeneral.gov
Sarah.Anderson@OhioAttorneyGeneral.gov
Amanda.Ferguson@OhioAttorneyGeneral.gov

*Attorneys for State of Ohio,
Ohio Environmental Protection Agency*


Pretec Directional Drilling, LLC
800 S. Douglas Rd., #1200
Coral Gables, Florida 33134
c/o Corporation Service Company
Statutory Agent
50 West Broad Street, Suite 1330
Columbus, Ohio 43215


   /s/ Stephen H. Daniels
Stephen H. Daniels (0019198)
Michael S. McMahon (0014285)
McMahon DeGulis LLP
The Caxton Building
812 Huron Road, E., Suite 650
Cleveland, Ohio 44115
(216) 367-1402
sdaniels@mdllp.net
mmcmahon@mdllp.net

*Counsel for Defendant, Rover Pipeline LLC*

8