IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, *EX REL.*, MICHAEL DEWINE OHIO ATTORNEY GENERAL, | Case No. 5:17-cv-02566-JRA |
| Plaintiff, | Judge John R. Adams |
| | Magistrate Judge Kathleen B. Burke |
| v. | |
| ROVER PIPELINE LLC, *et al.* | Removed from the Court of Common Pleas, Stark County, Ohio, Case No. 2017CV02216 |
| Defendants. | |

_____

**PLAINTIFF'S MOTION TO REMAND AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
_____

Under 28 U.S.C. § 1447(c), Plaintiff, the State of Ohio ("State" or "Ohio"), files its Motion to Remand the case to the Stark County Court of Common Pleas for lack of federal subject matter jurisdiction. Because Defendants Rover and Pretec fail to establish federal subject matter jurisdiction, remand is appropriate. A Memorandum of Points and Authorities in support of Ohio's Motion to Remand follows.

MICHAEL DEWINE
OHIO ATTORNEY GENERAL

*/s/ Aaron S. Farmer*
Aaron S. Farmer (0080251)
Janean R. Weber (0083960)
Amanda M. Ferguson (0089576)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
614-466-2766
Aaron.Farmer@OhioAttorneyGeneral.gov
Janean.Weber@OhioAttorneyGeneral.gov
Amanda.Ferguson@OhioAttorneyGeneral.gov

*Counsel for Plaintiff, State of Ohio*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REMAND**

**I.     INTRODUCTION**

The Ohio Attorney General, charged with enforcing state laws for the benefit of the citizens of Ohio, initiated this action in state court.  Dkt. No. 1-3, *First Amended Complaint ("FAC")* p. 3.  Pursuant to its congressionally-delegated authority, Ohio has enacted state water pollution control laws, promulgated state rules, and instituted state permitting programs.  Defendants violated these state laws, rules, and permits when they spilled millions of gallons of drilling fluid into Ohio's streams and wetlands.  Accordingly, and as the master of its own complaint, Ohio has brought all of its claims against Defendants for violations of state law.  With no federal laws to interpret or federal questions to answer, this Court should remand Ohio's First Amended Complaint to state court, where it belongs.

Further, the removing Defendants Rover Pipeline, LLC ("Rover") and Pretec Directional Drilling, LLC ("Pretec") cannot establish, as they must, that the matter should remain in federal court.  Although Rover's Removal Notice serves as Rover's first attempt to raise federal defenses such as preemption and waiver, a case may not be removed to federal court on these bases.  Defendants also fail to raise any significant federal issues under the Supreme Court's test in *Grable*.  In short, Defendants cannot carry their burden to prove subject matter jurisdiction, and for this reason, this Court should remand Ohio's action under 28 U.S.C. § 1447(c).[1]

**II.    LAW AND ARGUMENT**

Federal law, 28 U.S.C. § 1441, governs removal of actions from state to federal court. The statute provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed."  Federal district

---

[1] For the Court's convenience, the State of Ohio attaches, as Exhibit 3, a copy of the federal and state statutes and rules referenced in this Memorandum.

1

courts have original jurisdiction over "all civil actions arising under" the laws of the United States and strictly construe removal provisions against removal and in favor of remand. 28 U.S.C. § 1331; *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017). Further, "if a federal court is in doubt of jurisdiction, such doubt must be resolved in favor of state court jurisdiction." *Portage County Bd. of Comm'rs v. City of Akron*, 12 F. Supp.2d 693, 697 (N.D. Ohio 1998).

Defendants Rover and Pretec bear the burden of proving that federal jurisdiction exists and removal was proper. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). In this case, Defendants fail to establish "arising-under" jurisdiction. **First**, state law, not federal law, "creates the cause of action asserted." *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013). **Second**, Defendants cannot use their federal defenses of preemption and waiver to assert "arising-under" jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). **Third**, Defendants fail to demonstrate that Ohio alleges "state-law claims that implicate significant federal issues * * *." *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). In other words, Defendants fail to establish that *any* federal issue is: "(1) necessarily raised [and] actually disputed, (2) substantial, **and** (3) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. at 1065 (emphasis added) (numbering consolidated). Indeed, "[s]uch jurisdiction remains exceptional." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc).

### A. State—not federal law—creates every cause of action asserted in Ohio's First Amended Complaint.

This Court need not look further than the face of Ohio's First Amended Complaint to find that it raises only state claims for relief. *Caterpillar*, 482 U.S. at 392 ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Ohio pleads only violations of state law, which as described below, require no

showing of a violation of federal law. *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013) ("In assessing federal-question jurisdiction, the first question is what body of law creates the cause of action."). The Removal Notices, which sit outside the four corners of Ohio's First Amended Complaint, are irrelevant to this basic analysis. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936) ("[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.").

As the "master of the claim[s]," Ohio "avoid[ed] federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. In each Count, Ohio pleaded violations of its state law only, not federal law. Count One alleges violations of Ohio Rev. Code 6111.04(A) and Ohio Admin. Code 3745-33-02(A). *FAC* ¶ 101. Count Two alleges violations of Ohio Rev. Code 6111.04(A), Ohio Admin. Code 3745-38-02(A), and Ohio Admin. Code 3745-39-04. *FAC* ¶ 106. Count Three alleges violations of Ohio Admin. Code 3745-1-04. *FAC* ¶ 110. Count Four alleges violations of Ohio Admin. Code 3745-1-51. *FAC* ¶ 115. Count Five alleges violations of the Director's Orders, issued under Ohio Rev. Code 6111.03. *FAC* ¶¶ 116, 118. Count Six alleges violations of Rover's Hydrostatic Permit, issued under Ohio Rev. Code 6111.035. *FAC* ¶ 136. Count Seven alleges violations of Ohio Admin. Code 3745-32-02(B) and (C). *FAC* ¶ 141.

Further, none of the laws, rules, permits, or orders cited in the First Amended Complaint requires proof of a violation of federal law in order to establish a violation of state law. *Caterpillar*, 482 U.S. at 392 ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Violations of these state laws, rules, permits, and orders, in and of themselves, authorize the Ohio Attorney General to

bring a lawsuit in state court to enforce them.² Ohio Rev. Code 6111.07 and 6111.09. Thus, Defendants fail to meet their burden to prove that the State pleaded a federal claim on its face.

### B. Defendants cannot rely on federal defenses to establish federal jurisdiction.

Defendants cannot seek removal by invoking federal defenses. *Caterpillar, Inc.,* 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense."). Nonetheless, Defendants offer two—preemption under the Natural Gas Act and waiver of the 401 certification under the Clean Water Act. *See* Dkt. No. 1, *Rover Notice* ¶¶ 15-16, 18-19. Because Ohio's claims "rel[y] only on state law," these "federal defenses cannot create 'arising under' jurisdiction." *Waldock v. Rover Pipeline LLC*, No. 3:17-cv-959, 2017 U.S. Dist. LEXIS 120130, at *8 (N.D. Ohio July 31, 2017) *quoting Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) *and Caterpillar, Inc.*, 482 U.S. at 393.

This is not the first time Rover used the Federal Energy Regulatory Commission's ("FERC") authority under the Natural Gas Act *(see Rover Notice* ¶ 18) as a basis for removal. *See Waldock* (*supra*), at *10. The Northern District (Western Division) espied preemption, "a federal defense[,] masquerading as an 'essential element' of the plaintiff's claims." *Id.* at *11 *quoting Caterpillar*, 482 U.S. at 393 (emphasis deleted). That court issued remand because "a case may not be removed to federal court on the basis of a federal defense." *Id.*

Defendants' argument as to waiver of the state 401 certification under 33 U.S.C. § 1341(a) is another example of Defendants' attempt to write a federal defense into the State's claims. *See Rover Notice* ¶¶ 15-16, 20. After all, the consequence of such waiver, in Rover's estimation, is that Ohio has ceded its 401 enforcement powers to FERC, and presumably, the

---

² Ohio did not bring a citizen-suit action against Defendants in federal court under 33 U.S.C. § 1365. *Cf. United States v. City of Akron, et al.*, Case No. 5:09-cv-00272 (N.D. Ohio) (Ohio filed a cross-claim against the City of Akron in federal court only after the United States joined Ohio as a defendant under 33 U.S.C. § 1319(e) in the federal government's action against the City of Akron for Clean Water Act violations).

ability to enforce the state-fee requirement of Ohio Admin. Code 3745-32-02, an essential element to Count Seven. *See id.* The State need not prove absence of waiver to prevail on Count Seven; it must only prove violations of Ohio Admin. Code 3745-32-02(B) and (C). *FAC* ¶ 141. Thus, the defense of waiver from the federal Clean Water Act cannot warrant federal jurisdiction or removal. *Caterpillar*, 482 U.S. at 393.

### C. Defendants cannot demonstrate that Ohio alleges state-law claims that implicate significant federal issues.

The *Grable* test requires Defendants to establish that any federal issue is (1) necessarily raised and actually disputed, (2) substantial, ***and*** (3) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 133 S.Ct. at 1065 (emphasis added). Defendants cannot meet any—let alone all—of the *Grable* factors despite their obligation to do so. This Court should remand Ohio's case as a result.

#### 1. Ohio's First Amended Complaint does not necessarily raise a federal issue.

As discussed above, Ohio brings each of its claims under state law, not federal law, undercutting Defendants' argument that Ohio "necessarily raise[d]" a federal issue in its First Amended Complaint. *See Grable*, 545 U.S. at 314. Yet, Rover insists in its Removal Notice that Ohio raises several federal issues. Even with the Notices of Removal, which are beyond the scope of review (*see Gully*, 299 U.S. at 113), Defendants fail to raise any federal issue because the federal Clean Water Act is not "a necessary element of" the State's "well-pleaded state claims." *Mikulski*, 501 F.3d at 565 (citation omitted).

##### a. Ohio enforces against water pollution under its own law, not federal law.

Although Ohio developed its water pollution control programs pursuant to its congressionally-delegated authority, state—not federal—law supplies Ohio with the direct legal

5

authority to adopt rules, issue permits, and impose orders to regulate water pollution in Ohio. *See* Ohio Rev. Code 6111.03(G), (H), (J)(1).  Likewise, the enforcement of these laws, rules, permits and orders is authorized by state—not federal—law.  *See* Ohio Rev. Code 6111.07, 6111.09.

Ohio included paragraphs in its General Allegations relative to the Clean Water Act only to describe the cooperative federalism that exists between the states and federal government regarding water pollution control.  Significantly, the Clean Water Act expressly grants to the states the authority to administer their own permitting programs for water pollution discharges that occur within their jurisdictions. 33 U.S.C. § 1342(b); *FAC* ¶ 29.  On March 11, 1974, the state of Ohio received authorization to administer the National Pollution Discharge Elimination System or "NPDES" permitting program within its boundaries.[3]  Once the U.S. EPA transferred the NPDES program to Ohio, U.S. EPA suspended its own federal permitting authority.  *FAC* ¶ 29; 33 U.S.C. § 1342(c).  Congress delegated authority to Ohio, pursuant to Section 401 of the Clean Water Act, to issue water quality certifications to persons proposing to place fill materials into Ohio's waters. 33 U.S.C. § 1341(a).  The state certifications pledge that the discharges will comply with Ohio's water quality standards.  *Id.*

Not only does state law generally prohibit discharges of pollution to Ohio's waters (Ohio Rev. Code 6111.04), it gives the Director of Ohio EPA ("the Director") the authority to issue

---

[3] U.S. EPA, Permitting for Results (PER—NPDES Profile: Ohio (May 3, 2005) https://www3.epa.gov/npdes/pubs/ohio_final_profile.pdf at 1 of 36; *see Hardin v. Reliance Trust Co.*, No. 1:04-cv-2079, 2006 U.S. Dist. LEXIS 70818, at *12 (N.D. Ohio Sept. 29, 2006) ("the court may take judicial notice of information at a government agency website.") *citing Denius v. Dunlap,* 330 F.3d 919, 926 (7th Cir. 2003).

permits to authorize and regulate a variety of water pollution sources. *See, e.g.*, Ohio Rev. Code 6111.03(J) and (O). *See also FAC* ¶¶ 30, 39-40, 44-45, 73-75. When permits are not sought, or require enforcement to effectively control water pollution, state law authorizes the Director to issue administrative orders against the polluting party. *See* Ohio Rev. Code 6111.03(H)(1). Finally, and as a last resort, state law allows the Ohio Attorney General, upon the Director's written request, to seek injunctive relief and civil penalties for the polluting party's failure to comply with state water pollution control laws, rules, permits, and orders. *See* Ohio Rev. Code 6111.07 and 6111.09(A).

Thus, Ohio by and through its own laws—not the Clean Water Act—governs whether Defendants must obtain a state permit for discharges. Defendants cannot create an issue of federal law when Ohio administers state permits under Ohio law. *Gully*, 299 U.S. at 116 ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States * * *.") *cf. Lasher v. Bank of Am. N.A.*, No. 5:11-cv-1811, 2011 U.S. Dist. LEXIS 123426 at *4, *5 (N.D. Ohio Oct. 25, 2011) (case ultimately remanded, but issue of federal law supports removal where "parties dispute whether Federal Residential Lead-Based Reduction Act of 1992 creates a duty upon bank under the facts alleged by [p]laintiff."). Besides, Rover is well-aware of the State's authority to issue discharge permits, as Defendant operates under the Hydrostatic Permit, a state permit specific to test water discharges. *FAC* ¶¶ 73-74.

> b. **State law, not federal law, controls exemptions to storm water permitting in Ohio.**

Contrary to Defendants' assertions, the federal exemption from storm water permitting does not influence the State's NPDES claims. *Cf. Rover Notice* ¶¶ 10, 18-19. Ohio law offers the same exemption with the same bounds, and the State has properly alleged that this state-law

7

exemption no longer applies to Rover. *See FAC* ¶¶ 52, 104. Although Defendants may advance "a theory establishing federal subject matter jurisdiction" (*i.e.* the federal storm water exemption), no subject matter jurisdiction exists if "an alternative theory" against jurisdiction applies (*i.e.* the state-law exemption). *Lasher* (*supra*) at *6 *quoting Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 153 (4th Cir. 1994); *See also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) ("[I]t takes more than a federal element to open the 'arising under' door."). In other words, whether Rover's violations "could be addressed under either state or federal law does not ordinarily diminish [P]laintiff's right to choose a state law cause of action." *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994).

The state rule at issue—Ohio Admin. Code 3745-39-04(A)(2)(b)—generally excuses an oil or gas operation from obtaining a state storm water permit unless it discharges water pollution that contributes to a water quality violation under 3745-39-04(C)(1)(c)(iii). *See FAC* ¶¶ 49, 50, 52; *compare* 40 C.F.R. 122.26(c)(1)(iii)(C). In Count Two, the State alleged that Rover violated state water-quality-standard rules and thus, 3745-39-04, as well. *FAC* ¶¶ 104, 106. In Count Five, the State claims that Rover violated Director's Orders prompted by Rover's failure to obtain a storm water permit under the same state rule. *FAC* ¶¶ 116-118; Dkt. No. 1-4 at 9, *Director's Orders*, Final Findings ¶ 59. Because the State bases its storm water claims on Ohio law, Rover cannot show that the federal exemption is a "necessary element" of the State's claims. *Mikulski*, 501 F.3d at 565 (citation omitted).

The State's background references to the federal storm water exemption in the First Amended Complaint (*FAC* ¶¶ 48, 50) and the Director's Orders (¶¶ 57-59, Dkt. No. 1-4 pp. 8-9) do not invite this Court's jurisdiction. *See Mikulski*, 501 F.3d at 565 ("The mere presence of a federal issue in a state law cause of action does not automatically confer federal question

8

jurisdiction * * *."). Rover may prefer that this Court interpret the surrounding federal law, but "state courts are generally presumed competent to interpret," and if necessary, "apply federal law." *Id.* at 560; *see also Lasher* (*supra*), at * 8 (even if the complaint "suggests that any claim relying" on federal law "may be invalid," the "Court need not pass upon that issue * * * given the tangential nature of the federal question presented."). The Clean Water Act is no exception.

### c. Ohio has authority to adopt and enforce its state water quality standards.

Rover fails to articulate why Ohio's delegated authority for state water quality standards supports removal rather than remand. *See Rover Notice ¶* 12. Ohio has the delegated authority to adopt state water quality standards, and U.S. EPA must approve such standards before they become rule. *See* 33 U.S.C. § 1313(c). And here, since 1978 and 1998, respectively, the Director has adopted and revised Ohio's general water quality standards under Ohio Admin. Code 3745-1-04 and wetland-specific water quality standards under Ohio Admin. Code 3745-1-51, pursuant to his authority under state law. *See* Ohio Rev. Code 6111.041. Counts Three and Four of the First Amended Complaint allege that Defendants violated these water quality standards, **already adopted in these state rules**, when they discharged drilling fluids and sediment-laden storm water into Ohio's waters. *FAC ¶¶* 107-115.

It is because of, not in spite of, this delegated authority, that Ohio's claims belong in state court. Ohio may—and routinely does—enforce its water pollution control laws, rules, permits and orders by bringing claims for their violations in state courts. *See* Ohio Rev. Code 6111.07. To accept Defendants' proposition that Ohio's delegated authority under the Clean Water Act leads to the opposite conclusion would necessarily subject all of Ohio's environmental enforcement actions to removal. *See Rover's Notice ¶¶* 13-14. Thus, these state-only claims do

9

not invoke federal law or require any action by U.S. EPA, and consequently, a state court has jurisdiction over them.

### d. Ohio's claim against Rover based on its failure to timely pay fees raises no federal questions.

Rover tries to make a federal case out of Count Seven, but there is no federal question here. Under state law only, Rover failed to pay scheduled fees, and as a result, engaged in activities requiring a 401 certification before the certification was effective. *FAC* ¶¶ 137-141. These fees are required by state law (Ohio Rev. Code 6111.30(A)(5)), and are calculated under state law (Ohio Rev. Code 3745.114). Accordingly, prematurely taking action under a 401 certification before paying the application fees violates state law. *FAC* ¶ 141 (Defendants violated Ohio Admin. Code 3745-32-02, and consequently, Ohio Rev. Code 6111.07).

Rover's claim that Ohio waived its authority to issue a 401 certification does not trigger removal. *Cf. Rover Notice* ¶ 15. Instead, it begs the question: Why did Rover ultimately (albeit untimely) pay its certification fees if the company considered the 401 certification waived? *FAC* ¶ 139 (Rover finally paid on May 15, 2017). Regardless of the answer, Rover's assertion of waiver is merely an attempt to disguise a federal defense as an essential element of Ohio's state-law claim. *See Rover Notice* ¶ 20. As discussed above, federal defenses, such as waiver, cannot provide a basis for removal to federal court, so remand must follow. *Caterpillar*, 482 U.S. at 393.

Should this Court find that Rover's waiver argument is somehow essential to Ohio's claims at Count Seven, the extremely fact-based nature of the inquiry also supports remand, rather than removal. *See Empire*, 547 U.S. at 701 ("fact-bound and situation-specific" issues belong in state court on remand). For example, the State did not "fail or refuse to act * * * within a reasonable period of time (which shall not exceed one year)" as Rover suggests. *See* 33 U.S.C. § 1341(a); *cf. Rover Notice* ¶ 15. Rather, Ohio EPA and Rover worked collaboratively on

the state 401 certification during this entire period—November 2015 through February 2017—addressing deficiencies in the applications and revising the certification at Rover's direction. *Kallipolitis Affidavit* ¶ 8 attached as Exhibit 1; *see Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 n.11 (6th Cir. 2010) (Federal district courts are "empowered to review extra-complaint evidence" if "a district court's subject matter jurisdiction is in question."). According to FERC, revised applications restart the one-year deadline for states to act on the certification, and Rover submitted a revised application one day before Ohio EPA issued the certification. *Woodland Pulp LLC*, Project No. 2492-013, 154 F.E.R.C. P62, 189 (March 22, 2016) ¶¶ 31-34; *Kallipolitis Affidavit* ¶¶ 9-10; Rover's Revised 401 certification, dated February 23, 2017, attached as Exhibit 2 p. 2. Thus, Ohio EPA did not fail or refuse to act under 33 U.S.C. § 1341(a).

Ohio and Rover may dispute waiver under § 1341(a), but the depth of the inquiry, not the result, demands state court review. The attached evidence previews a "fact-bound and situation-specific" issue for a state court to examine on remand. *See Empire*, 547 U.S. at 701. There is no pure question of federal law, the resolution of which will necessarily influence every state 401 certification. *Id.* at 700. Instead, a state trial court must hear specific evidence to determine whether Ohio acted within one year of Rover's (revised) request. *See id.* at 701. Thus, Remand applies even though the parties dispute the interpretation of federal law.

### 2. Defendants fail to raise any substantial federal issues of law.

To the extent this Court finds that Defendants raise disputed issues of federal law, they fail to meet the "substantial" requirement for federal jurisdiction. The Sixth Circuit uses a four-part test for the *substantial* factor: (1) Does the action include a federal agency, and does the federal agency fail to comply with the federal statute at issue? (2) Is the federal issue important? (3) If the Court decides the federal issue, will it dispose of the case? (4) If the Court resolves the

11

federal issue, "will [it] control numerous other cases"?  *Mikulski,* 501 F.3d at 570.  All of these factors support remand here.

*First*, the State's case does not include a federal agency or depend upon a federal agency's compliance with federal law.  *See id.*  Instead, Ohio EPA, under Ohio law, regulates Defendants' water pollution discharges through state permits and rules.  *See Columbia Gas Transmission,* 707 F.3d at 590 ("A federal agency is not involved, and because there is no dispute about a federal question, it follows that the federal issue will not resolve the case.").

*Second,* the State's claims raise state—not federal—issues of law as discussed at length above, so "the issue of whether the alleged federal question is important is largely unnecessary." *Funderwhite v. Joint Apprenticeship & Training Comm.*, 196 F. Supp.3d 757, 764 (N.D. Ohio 2016).  Even so, the federal delegation of authority (*Rover Notice* ¶¶ 9, 10, 13, 14), the federal storm water exemption (*Rover Notice* ¶¶ 10, 19), and Rover's claim that the State waived the 401 certification (*Rover Notice* ¶¶ 15, 16, 20), are ancillary—not important—to adjudicate the State's claims rooted in Ohio law.  *Mulcahey*, 29 F.3d at 153 (remand if "an alternative theory" against jurisdiction applies even when "a theory establishing federal subject matter jurisdiction" exists.).

*Third*, "[t]o the degree that any federal question is presented here, its resolution will not resolve all aspects of the case."  *Funderwhite*, 196 F. Supp.3d at 765.  For example, beyond the drilling-fluid and sediment-laden discharges, Count Six alleges violations of a state NPDES Hydrostatic Permit under which Rover obtained coverage from Ohio EPA.  *FAC* ¶¶ 73-74, 136. Without any connection to a federal issue in Count Six, the Court should remand the case.

*Fourth,* behind every one of Rover's issues, lies "a fact-bound inquiry" isolated to this case and best suited for a state court, not federal court.  *See Columbia Gas Transmission*, 707 F.3d at 590.  For example, Exhibit 1—the *Kallipolitis Affidavit*, shows that any dispute as to

waiver of the state 401 certification requires a factual determination. The answers to Rover's federal delegation questions (whether the Clean Water Act or state law imposes compliance duties (*Rover Notice* ¶¶ 9, 10, 13, 14)), may find some value in future cases. But fact-specific questions remain as to whether, and to what extent, Rover failed these duties. "Substantiality, therefore, is not established where the federal issue is not predominant, but is merely a backdrop for a largely factual dispute, as is the case here." *RX.COM, Inc. v. O'Quinn*, 766 F.Supp.2d 790, 796 (S.D. Texas 2011) ("[S]omething more is required for a federal interest to be 'substantial' than the mere fact that the state court will be asked to follow federal standards in the context of adjudicating a state law claim."). As such, Defendants cannot meet *Grable*'s "substantial" requirement.

### 3. The balance between federal and state responsibilities supports state, not federal, jurisdiction.

The third and final *Grable* factor—the "congressionally approved balance of federal and state judicial responsibilities"—cuts sharply in favor of state-court jurisdiction. *See Mikulski*, 501 F.3d at 568. Consider the plain text of the Clean Water Act. Congress "recognize[s], preserve[s], and protect[s] the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution * * *." 33 U.S.C. § 1251(b). This section "protects and preserves the rights of states to effectuate remedies for lawsuits not incompatible with the federal mandates of the Act." *Portage County Bd. of Comm'rs*, 12 F.Supp.2d at 702. States are free to "adopt or enforce * * * standard[s] or limit[s] respecting discharges of pollutants" and impose "requirement[s] respecting control or abatement of pollution." 33 U.S.C. § 1370. The Clean Water Act shall not invade "any right or jurisdiction of the States with respect to the waters * * * of such States." 33 U.S.C. § 1370.

13

These Clean Water Act provisions ensure that states enforce their water pollution control laws in state courts. The existence of the federal storm water exemption (*Rover Notice* ¶¶ 10, 19) and argument for waiver of the certification (*Rover Notice* ¶¶ 16, 20) fail to change this result. *See Empire,* 547 U.S. at 701 ("It takes more than a federal element to open the 'arising under' door."); *see also Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) ("When federal law play so minor a role, it does not suffice to establish federal jurisdiction."). These repeated references to federal law, against the background of Ohio's state-law enforcement action, confirm the state court's jurisdiction. Otherwise, federal courts would rule on every state-law issue, whether legal or fact-based, that brushes up against the Clean Water Act. This is unacceptable as it creates a "risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation." *See Mikulski*, 501 F.3d at 573.

Rover's appeal to the Natural Gas Act fares no better than its reliance on the Clean Water Act. *Cf. Rover Notice* ¶¶ 18, 20, 21. Congress expressly stated that "nothing in this [Natural Gas] Act affects the rights of States under * * * the [Clean Water Act]." 15 U.S.C. § 717b(d). Because the Clean Water Act, under 33 U.S.C. §§ 1251(b) and 1370, grants states authority to enforce against water pollution, state courts maintain jurisdiction to adjudicate state claims. *See* 33 U.S.C. § 1370 (nothing "impair[s] or in any manner affect[s] any right or *jurisdiction* of the States with respect to the waters * * * of such States.") (emphasis added).

Similarly, Ohio's *purported* request to impose "storm water control procedures specified in FERC's certificate" has no effect on remand. *Cf. Rover Notice* ¶ 21. The State does not seek a court order for Rover to comply with the FERC certification; rather it asks that the company conform to Ohio EPA plans addressing pollution controls. *See FAC* ¶ 69, p. 32-33. Regardless,

14

there is no dispute here because Rover publicly expressed that it will comply with these procedures as incorporated into Ohio EPA plans.[4]

Ohio maintains authority to enforce state laws in its own courts. The Clean Water Act and the Natural Gas Act reserve this enforcement power to the states. Thus, Ohio's authority to enforce state laws should be preserved through remand.

## III. CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court grant the motion to remand its state action to the Stark County Court of Common Pleas.

    Respectfully Submitted,

    MICHAEL DEWINE
    OHIO ATTORNEY GENERAL

    */s/ Aaron S. Farmer*
    Aaron S. Farmer (0080251)
    Janean R. Weber (0083960)
    Amanda M. Ferguson (0089576)
    Assistant Attorneys General
    Environmental Enforcement Section
    30 East Broad Street, 25th Floor
    614-466-2766
    Aaron.Farmer@OhioAttorneyGeneral.gov
    Janean.Weber@OhioAttorneyGeneral.gov
    Amanda.Ferguson@OhioAttorneyGeneral.gov

    *Counsel for Plaintiff, State of Ohio*

---

[4] Rover's Request for Authorization, FERC Docket Nos. CP15-93-000, CP15-94-000, and CP15-96-000 (filed with FERC as 20170818-5124 PDF) (August 18, 2017) https://elibrary.ferc.gov/idmws/common/OpenNat.asp?fileID=14662075 at 2-4 (the plans follow the letter); *see Hardin* (*supra*), at *12 ("judicial notice of information at a government agency website.").

## CERTIFICATE OF SERVICE

I certify that on December 29, 2017 a true and accurate copy of the above Motion to Remand and Memorandum of Points and Authorities in Support of Remand was filed electronically and served upon the following by email and through the Court's electronic filing system.


Stephen H. Daniels
Michael S. McMahon
McMahon DeGulis LLP
The Caxton Building
812 Huron Road, E., Suite 650
Cleveland, Ohio 44115
216-367-1402
sdaniels@mdllp.net
mmcmahon@mdllp.net

*Counsel for Defendant, Rover Pipeline, LLC*


William Scherman ***
David Debold ***
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
202-887-3510
wscherman@gibsondunn.com
ddebold@gibsondunn.com

*Counsel for Defendant, Rover Pipeline, LLC*


*** *Application for Pro Hac Vice Pending*

Joseph P. Koncelik
Anthony R. Petruzzi
Melissa Z. Kelly
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
216-696-2373
joseph.koncelik@tuckerellis.com
anthony.petruzzi@tuckerellis.com
melissa.kelly@tuckerellis.com

*Counsel for Defendant, Pretec Directional Drilling, LLC*

                                                                       */s/ Aaron S. Farmer*_____
                                                                        Aaron S. Farmer (0080251)
                                                                        Assistant Attorney General