UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| State of Ohio, | ) | CASE NO.: 5:17CV2566 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Rover Pipeline, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is the State of Ohio's motion to remand this matter to the Stark County Court of Common Pleas. Doc. 13. Defendants Rover Pipeline, LLC ("Rover") and Pretec Directional Drilling, LLC ("Pretec") have opposed the motion. Docs. 15, 18. Ohio has replied in support of its motion (Doc. 21), and the Court heard oral argument from the parties on January 16, 2018 during the case management conference in this matter. The motion to remand is GRANTED.

Where a claim finds its origins in state rather than federal law, the Supreme Court has identified a "special and small category" of cases in which arising under jurisdiction still lies. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

> In an effort to bring some order to this unruly doctrine several Terms ago, we condensed our prior cases into the following inquiry: Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? *Grable*, 545 U.S., at 314. That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

> federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn*, 568 U.S. at 258.

Initially, the Court agrees with Rover and Pretec. This matter necessarily raises a federal issue in some capacity that is in dispute. Ohio contends in its complaint that Rover discharged pollutants without proper NPDES permits, failed to obtain a necessary storm water permit, violated Ohio's water quality standards, violated Ohio's wetland water quality standards, violated an order of the Director of the Ohio EPA, violated its hydrostatic permit, and engaged in activities without proper certification.

Ohio is correct that the source of each of its claims resides in Ohio law. However, Ohio cannot ignore that there is a significant interplay herein between Ohio law, the Natural Gas Act ("the NGA") and the Clean Water Act ("the CWA"). In that respect, the Court agrees with the analysis performed by a colleague in the Eastern District of North Carolina: "the North Carolina statute that determines whether persons must obtain an NPDES permit explicitly relies on federal regulations. Should the state bring an enforcement action based on a person's failure to obtain an NPDES permit, the state must prove (among other things) that federal law required the permit. Accordingly, such an action would necessarily raise a federal issue." *Rose Acre Farms, Inc. v. N. Carolina Dept. of Environment and Natural Resources*, 131 F. Supp. 3d 496, 503 (E.D.N.C. 2015). The same logic applies herein. While Ohio has adopted regulations regarding NPDES permitting and other quality standards, it has done so pursuant a delegation of authority

by Congress under the Clean Water Act.  As such, the complaint necessarily raises a federal issue.

Moreover, there can be doubt that the parties highly dispute the federal issue. Rover and Pretec believe that Ohio ceded all control of any Clean Water Act issues to the Federal Energy Regulatory Commission. Ohio does not believe that it relinquished any of its authority.  As such, the federal issues are in dispute.

For the purposes of this opinion, the Court will assume without deciding that the issues raised are substantial.

Accordingly, the Court is left to consider whether the federal issue can be "vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258.  With respect to the Clean Water Act, Congress noted expressly that it was the federal government's policy to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution[.]"  33 U.S.C. § 1251(b).

> Viewing holistically the cooperative federal-state structure that the CWA created, it follows that Congress chose state courts to be the means by which parties may challenge state permitting decisions. *See, e.g., District of Columbia v. Schramm*, 631 F.2d 854, 863 (D.C.Cir.1980) ("By requiring states to maintain or create sufficient legal and equitable rights and remedies to deal with violations of state permits in order to exercise permit-granting powers under the Act, Congress must have intended that states apply their own law in deciding controversies involving state permits."); *Mianus*, 541 F.2d at 902, 906; *Ohio Vally Envtl. Coal., Inc. v. Fola Coal Co.*, No. 2:12–cv–3750, 2013 WL 6709957, at *12 (S.D.W.Va. Dec. 19, 2013) (unpublished) ("If a permit holder desires to attack the terms of an NPDES permit issued by the state permitting authority, it must bring an action challenging the terms of the permit under state procedures and cannot seek collateral review of the permit in federal court."); *Nat. Res. Def. Council, Inc. v. Outboard Marine Corp.*, 702 F.Supp. 690, 694 (N.D.Ill.1988) ("It follows, then, that direct review of EPA-uncontested state-issued permits is confined to state courts.... Such a federal-state division of roles and responsibilities is wholly consistent with the goals of

> the Act and the NPDES system."); *cf. Gen. Motors Corp. v. EPA*, 168 F.3d 1377, 1382–83 (D.C.Cir.1999) (finding reasonable the EPA's interpretation of the CWA to preclude collateral attacks in federal court on state permitting decisions).

*Rose Acres Farms*, 131 F. Supp. 3d at 504-505. *Rose Acres* relied upon this analysis to conclude that exercising jurisdiction would "disrupt" the division of labor between the federal and state government.

Rover and Pretec urge a different result herein. Specifically, Rover and Pretec contend that an additional layer of federal law, the NGA, is present in this matter and compels a conclusion that jurisdiction may be exercised without disrupting the balance between state and federal government. However, the role of the NGA in this litigation is minor, at best. First, it is invoked solely through the defenses that Rover and Pretec are likely to pursue. Rather than the focal point of the litigation, the NGA will be a footnote. Instead, with respect to federal law, the litigation will focus upon the Clean Water Act. As such, the Court finds the logic espoused in *Rose Acres* to apply in this matter despite the presence of an interstate pipeline.

Accordingly, this Court cannot exercise jurisdiction without disrupting the division of labor between the state of Ohio and the federal government. The motion to remand is GRANTED. This matter is hereby remanded to the Stark County Court of Common Pleas.

IT IS SO ORDERED.


Dated: <u>January 25, 2018</u>           <u>/s/ Judge John R. Adams</u>
                                                 JUDGE JOHN R. ADAMS
                                                 UNITED STATES DISTRICT COURT